

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

FILED
Aug 29, 2018
02:30 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

| | | |
|---|---|---|
| Ricky Polk | ) | Docket No. 2017-07-0644 |
| | ) | |
| v. | ) | State File No. 40864-2017 |
| | ) | |
| Delta Faucet | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Allen Phillips, Judge | ) | |

---

### Affirmed and Remanded - Filed August 29, 2018

---

This interlocutory appeal concerns whether an employer is entitled to a presumption of causation under Tennessee's Drug-Free Workplace Program in circumstances where a drug test is not requested until sixteen days after the alleged accident; and, if so, whether the evidence presented at the expedited hearing supports a conclusion that the employee is likely to overcome that presumption by clear and convincing evidence. The employer asserts the trial court erred in determining that a post-accident drug test was not timely administered, which resulted in the court's refusal to apply a statutory presumption that the employee's drug use was the proximate cause of the injury. The drug test, administered sixteen days after the work accident, was terminated due to the employee's purported attempt to falsify the test. The trial court ordered the employer to provide the employee a panel of physicians, and the employer has appealed. We conclude that although the trial court erred in not applying a presumption of causation under the circumstances presented, this error was harmless because the evidence indicates the employee is likely to overcome the presumption by clear and convincing evidence at trial. Accordingly, we affirm the trial court's order on other grounds and remand the case.

Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Presiding Judge Marshall L. Davidson, III, joined. Judge David F. Hensley concurred in part and dissented in part.

Hailey H. David, Jackson, Tennessee, for the employer-appellant, Delta Faucet

Ricky Polk, Brownsville, Tennessee, employee-appellee, pro se

## Factual and Procedural Background

Ricky Polk ("Employee"), a thirty-nine-year-old resident of Haywood County, Tennessee, worked for Delta Faucet ("Employer") where, at various times, he operated equipment such as a forklift and an "order picker." On May 22, 2017, Employee was involved in an accident when the order picker he was operating was hit by a forklift operated by a co-worker, causing him to be "thrown into the cage of the front of the forklift." He notified his immediate supervisor of the accident before leaving work. While driving home after his shift, he began experiencing symptoms he described as "aches and pains." At the expedited hearing, Employee testified that, after arriving home, he began calling and leaving messages with Employer's front office to report his injury, but that he did not receive a return call. Employee returned to work that evening and told his "group leader" he wanted to see a doctor, but Employer did not provide him a panel of physicians at that time. After completing his shift on the day following the accident, Employee went to his family doctor, who declined to treat him without approval from Employer because he was asserting a work-related injury.

Employee further testified he continued to request medical care, but was told by April Collins, Employer's Environmental, Health, Safety and Security Specialist, "that they would actually set [him] up with a personal trainer in [Employer's] fitness gym." Although Employee saw the trainer three times weekly, he testified he continued "letting [his] supervisor know that [he] still needed to see a doctor." Employer later provided a panel of orthopedic physicians to Employee, and on June 2, 2017, Employee selected a physician from the panel. When Employee was advised that his appointment was scheduled a week and a half later, he said he wanted to see a doctor sooner than that due to the pain he was experiencing. Upon reporting to work on June 7, Employee was given a panel of medical clinics in an attempt to hasten the appointment, and he selected the Jackson Clinic from the panel. Employee was scheduled to be seen at the clinic after he completed his shift on the morning of June 8. However, Employer decided to administer a drug test to Employee during his shift on June 8, sixteen days after the accident. When Employee allegedly attempted to manipulate the drug test, he was terminated. He did not see a doctor until June 21, 2017.

Ms. Collins, Employer's representative, testified she was Employer's point person for setting up medical care for Employee and that there had been some difficulty coordinating medical treatment with him that she attributed, at least in part, to Employee's shift work. She testified Employee was given the option of either seeing an athletic trainer on site that Employer provides pursuant to a contract with Work Plus Rehab, or seeing a doctor, and that Employee elected to see an athletic trainer. She explained that Employer offered an athletic trainer as "conservative first go-to treatment or – you know, proactive means might be a better word for that, for heat, ice, stretching, [and] Biofreeze." She testified an employee does not have to go to the athletic trainer, explaining, "it is just simply offered, but it is not a requirement that they do that."

2

Further, she testified that Employee was provided a panel of orthopedics, but that Employee "did not feel that he could wait that long [to see a doctor], so they were going to set up a general practitioner's appointment." She stated a panel of general practitioners was provided to Employee on June 7 and that Employee selected a doctor from the panel and signed the panel form. When asked about the drug test Employer attempted to administer on June 7, she testified that medical providers sometimes do not administer drug tests, so Employer "will schedule that ahead of time," which she said is "what happened in this case."

Employee testified that in the days before an appointment was made for him to be seen by a doctor, he began taking medicine he obtained from family and friends to manage his pain. He testified that a relative had died due to an interaction of medications and, once he knew he was going to see a doctor, he stopped taking the medications he received from his family and friends. He also testified he "was actually trying to get that out of [his] system, flush [his] system out, [and] that [he] was testing himself."

Eddie Holloway, a registered nurse employed with Work Care Resources, administered Employee's drug test. He testified he began administering the test to Employee at 11:45 p.m. on June 7, 2017, and that he collected the first specimen at 12:10 a.m. on June 8. Mr. Holloway testified that because the specimen did not have an acceptable temperature in the 90 to 100 degrees Fahrenheit range based on the temperature strip manufactured into the collection cup, he advised Employee the specimen would be discarded and Employee could provide another specimen under "direct observation." He further testified that when Employee's test resumed at 12:40 a.m., he observed what he thought might be a sock in Employee's underwear and asked him to remove it. He testified "it was a vessel of [some] sort carrying some yellow fluid," and that the test was terminated at that point as "[t]hat's the procedure." Ms. Collins testified that Employer was a certified drug-free workplace pursuant to Tennessee Code Annotated sections 50-9-101 through -115 (2017). She testified that "consistent with [Employer's] policy, based on what happened during [Employee's] drug screen," his employment was terminated.

Following an expedited hearing, the trial court determined that Employee "did attempt to manipulate the drug test . . . and therefore 'refused' to take that test," as provided in 40 CFR section 40.191(a)(10). Noting that Tenn. Comp. R. & Regs. 0800-02-12-.05(5)(c) (2009) provides that an injured employee is to submit to testing in the case of non-emergency injuries reported after the fact "at the time the injury is entered into the covered employer's OSHA 200 Log,"[1] the trial court concluded "the May 22 event triggered the provisions of the [Drug Free Workplace Rules] regarding when

---

[1] The regulation governing post-accident drug testing was amended, effective May 2018, to provide that the employer is to conduct testing "after an accident which results in an injury to any employee" and that the "injured employee shall submit to testing when the injury is reported to the employer." Tenn. Comp. R. & Reg. 0800-02-12-.05(5)(c) (2018).

3

[Employer] must enter the injury for OSHA purposes." The court further concluded that Employer "should have administered the drug test to [Employee] at that time rather than sixteen days later on June 7." Based on that conclusion, the court found that the attempted drug test "did not meet the requirements for drug testing under the applicable statute and rules of the [Drug Free Workplace Program]" and awarded Employee "medical benefits in the form of a panel of physicians to evaluate his alleged injuries." Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2017). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2017).

## Analysis

Employer contends: (1) the attempted drug test was timely and complied with applicable regulations of the Department of Labor and Workforce Development and the Bureau of Workers' Compensation; (2) Employee's attempt to manipulate the test constitutes a refusal to submit to the test; (3) the refusal to submit to the test results in a statutory presumption that the proximate cause of Employee's injury was the influence of drugs; and (4) Employee did not produce clear and convincing evidence that the proximate cause of the injury was not the influence of drugs. Employer's assertions are based on the underlying premise that the attempted drug test was timely administered and Employee did not produce sufficient evidence to show he will likely rebut the presumption of causation by clear and convincing evidence at trial.

Tennessee Code Annotated section 50-6-110(a)(3) (2017) provides that no compensation shall be allowed for an injury due to "[t]he employee's intoxication or illegal drug usage." In instances where an employer has implemented a drug-free

4

workplace consistent with statutory requirements, "if the injured employee has a positive confirmation of a drug as defined in § 50-9-103, then it is presumed that the drug . . . was the proximate cause of the injury." Tenn. Code Ann. § 50-6-110(c)(1). This presumption is not conclusive, however, and may be rebutted by clear and convincing evidence that the employee's intoxication or drug use was not the proximate cause of the injury. *Id.* Furthermore, if an injured worker "refuses to submit to a drug test, it shall be presumed, in the absence of clear and convincing evidence to the contrary, that the proximate cause of the injury was the influence of drugs." Tenn. Code Ann. § 50-6-110(c)(2).

Tennessee Code Annotated section 50-9-104(a) (2017) requires employers covered by the Drug-Free Workplace Program to conduct tests "in conformity with the standards and procedures established in this chapter and all applicable rules adopted pursuant to this chapter." Moreover, section 50-9-106(a)(5), which addresses post-accident testing, provides that "[a]fter an accident that results in an injury . . . the covered employer shall require the employee to submit to a drug or alcohol test in accordance with this chapter." Tenn. Code Ann. § 50-9-106(a)(5) (2017).

On the date of the accident in this case, the applicable regulations of the Bureau of Workers' Compensation obligated Employer to "require the employee to submit to a drug or alcohol test" as prescribed in the regulations. The regulations include the following provision concerning post-accident testing:

> In the case of non-emergency injuries reported to the covered employer after the fact, the injured employee must submit to testing at the time the injury is entered into the covered employer's OSHA 200 Log or any authorized or required replacement for the OSHA 200 Log.

Tenn. Comp. R. & Regs. 0800-02-12-.05(5)(c). Accordingly, once Employer was required to enter the occurrence of the injury into the appropriate OSHA Log, Employer's obligation to administer a drug test to Employee was triggered.[2]

Based on the evidence presented at the expedited hearing, we conclude the trial court had insufficient evidence to reach a conclusion as to whether and at what time the reported accident became an OSHA-recordable event sufficient to trigger the regulations indicating when a drug test could occur. Neither party presented evidence relevant to this issue. Moreover, the extent and nature of the treatment provided by the Work Plus Rehab athletic trainer is unknown, and the court had insufficient evidence to determine whether this treatment was sufficient to trigger the OSHA reporting requirements. In short, whether the drug test administered by Employer sixteen days after the accident was

---

[2] We note that this regulation does not prohibit an employer from administering a drug test *prior to* the date the accident becomes an OSHA-recordable event, but merely states when an employer must conduct a drug test to be in compliance with the Drug-Free Workplace Program.

timely and in accordance with applicable regulations cannot be determined based on the evidence submitted to date, and we conclude it was error for the trial court to reach such a conclusion.

However, we also conclude this error was harmless. Even if we presume Employer is entitled to a presumption of causation in accordance with Tennessee Code Annotated section 50-6-110(c)(2), we further conclude there was sufficient evidence presented at the expedited hearing for the court to find Employee is likely to prevail at trial in rebutting this presumption by clear and convincing evidence.

First, Employee's testimony as to how the work accident occurred was unrefuted. He testified, without dispute, that he was operating a loader when a forklift operated by a co-worker emerged from an aisle and struck his loader. Second, Employee testified without contradiction that he reported the accident that day and attempted to report his injury after his shift had ended. It is further undisputed that he requested medical care the following day and received what Employer's representative described as "first go-to treatment" from a Work Rehab Plus athletic trainer. Third, Employer's representative admitted that when Employee was later provided a panel of orthopedic physicians, he expressed concern that the appointment could not be scheduled quickly enough and stated his symptoms were such that he needed treatment sooner. Fourth, there is no dispute that a drug test was not attempted until sixteen days after the work accident. Thus, we conclude that the totality of the undisputed facts establishes that Employee is likely to prevail at trial in rebutting the presumption that drug or alcohol use was the proximate cause of his injury.

**Conclusion**

For the foregoing reasons, we conclude the trial court erred in determining the accident was an OSHA-recordable event triggering the drug-testing requirement, and Employer's attempt to conduct a drug test sixteen days later was untimely. However, we also hold this error was harmless under the circumstances, and there was sufficient evidence for the court to find Employee is likely to rebut the presumption of causation by clear and convincing evidence at trial. Therefore, we affirm the trial court's order directing Employer to provide Employee a panel of physicians, and we remand the case.

6



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| Ricky Polk | ) | Docket No.  2017-07-0644 |
| | ) | |
| v. | ) | State File No. 40864-2017 |
| | ) | |
| Delta Faucet | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Allen Phillips, Judge | ) | |

---

**Concurring in Part and Dissenting in Part - Filed August 29, 2018**

---

Hensley, J., concurring in part and dissenting in part.

I agree with the majority's conclusion that the trial court erred in determining the employer did not timely administer the drug test but for reasons that differ from those of the majority. The majority avoids addressing a critical issue in the case, that is, whether the presumption in Tennessee Code Annotated section 50-6-110(c)(2) is applicable. That statute provides that "[i]f the injured worker refuses to submit to a drug test, it shall be presumed, in the absence of clear and convincing evidence to the contrary, that the proximate cause of the injury was the influence of drugs." The majority reasons that the trial court's error was harmless based on the majority's further conclusion that "[e]ven if we presume [the presumption in section 50-6-110(c)(2) is applicable]," the employee presented sufficient evidence "for the court to find Employee is likely to prevail at trial in rebutting this presumption by clear and convincing evidence." Based upon my review of the evidence presented, I respectfully disagree with this conclusion.

In my opinion, the employer timely attempted to administer a post-accident drug test in accordance with the applicable regulations, but the drug test was thwarted by the employee's use of a device that interfered with the collection process. This resulted in the test being terminated and, as provided in applicable regulations, amounted to the employee's refusal to submit to the drug test. The employee's refusal to submit to the drug test then invoked the statutory presumption as provided in section 50-6-110(c)(2). Thus, the issue the trial court failed to address, but which the majority finds to be determinative, was whether the employee's proof was sufficient for the court to determine he would likely prevail at trial in overcoming the presumption that the influence of drugs was the proximate cause of his May 22, 2017 injuries. In my view, not

1

only was the employee's proof insufficient, but it completely ignored whether his injuries were proximately caused by the influence of drugs.

As noted above, the trial court did not address this issue. Not only did the trial court fail to address whether the statutory presumption was applicable, but it failed to address the proof concerning whether the proximate cause of the employee's injuries was the influence of drugs. Nonetheless, the majority concludes "there was sufficient evidence presented at the expedited hearing for the court to find Employee is likely to prevail at trial in rebutting this presumption by clear and convincing evidence." As the Appeals Board has previously stated, it is not our role to address an issue in the first instance. *See Buckner v. Eaton Corp.*, No. 2016-01-0303, 2016 TN Wrk. Comp. App. Bd. LEXIS 84, at *12 (Tenn. Workers' Comp. App. Bd. Nov. 9, 2016) ("[I]t is not our place to address . . . issues [not resolved by the trial court] in the first instance on appeal."). Here, the majority ignores this directive.

Before turning to the proof, it bears repeating that the analysis starts with the presumption that the proximate cause of the employee's May 22, 2017 injuries was the influence of drugs. *See* Tenn. Code Ann. § 50-6-110(c)(2). This is a different presumption than the presumption imposed as a result of a positive confirmation of a drug as contemplated in section 50-6-110(c)(1). Here, the drug test was manipulated by the employee's actions. Following the first failed effort by the nurse to obtain a specimen with an acceptable temperature, the nurse entered the room with the employee to observe the employee provide a specimen. He testified he observed what he thought might be a sock in the employee's underwear and asked him to remove it. He testified that "it was a vessel of [some] sort carrying some yellow fluid," and that the test was terminated at that point as "[t]hat's the procedure."

The applicable regulations provide that the possession or wearing of a device that could be used to interfere with the collection process is one of the events that results in an employee having "refused to take a drug test." 49 CFR § 40.191(a)(10) (2017); *see also* Tenn. Code Ann. § 50-9-107 ("All specimen collection and testing for drugs and alcohol under this chapter shall be performed in accordance with the procedures provided for by the United States department of transportation rules for workplace drug and alcohol testing compiled at 49 CFR part 40."). It was the employee's "refusal" that invoked the presumption in section 50-6-110(c)(2). At a trial on the merits, this presumption can only be overcome by evidence that is clear and convincing, which is "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). If an employee prevents an employer from obtaining test results by refusing to submit to a drug test, section 50-6-110(c)(2) imposes on such employee the burden of overcoming, by this higher standard of proof, the presumption "that the proximate cause of the injury was the influence of drugs." Tenn. Code Ann. § 50-6-110(c)(2). The instant case is an appeal of an expedited hearing order. Nonetheless, in my view, the employee had the

2

burden at the expedited hearing of presenting sufficient evidence from which the trial court could determine that, at a trial on the merits, the employee would likely overcome the statutory presumption by clear and convincing evidence. That is the starting point for the analysis of the evidence.

The majority notes "[f]irst," that the employee's testimony as to how the accident occurred was unrefuted. The employee did not testify that he had not taken drugs before the accident and did not testify he was not under the influence of drugs at the time of the accident. The employee's affidavit addressed the accident and the subsequent drug test, but it was silent as to whether he was under the influence of drugs at the time of the accident. No medical records were admitted into evidence. Thus, there was neither lay testimony nor expert testimony addressing whether the employee was under the influence of drugs at the time of the accident. There was evidence, however, that a co-worker operating equipment directly in front of the employee was able to swerve and avoid an accident, but the employee did not.

The majority's "[s]econd" statement addressing the evidence is that the employee "testified without contradiction that he reported the accident that day and attempted to report his injury after his shift had ended." This evidence, even if credible, does not address whether the accident and the employee's injuries were proximately caused by the influence of drugs. Further, the majority notes it was "undisputed that [the employee] requested medical care the following day and received what Employer's representative described as 'first go-to treatment' from a Work Rehab Plus athletic trainer." Again, this evidence does not address whether the employee's injuries were caused by the influence of drugs. Indeed, one can argue that the employee made the decision to be seen by an athletic trainer rather than a medical provider to avoid having to undergo a drug test.

"Third," as stated by the majority, the employer acknowledged that the employee expressed "concern that the appointment" scheduled with the orthopedic physician "could not be scheduled quickly enough" and stated "he needed treatment sooner." I fail to see how that testimony makes it any less likely that the employee's injuries were caused by the influence of drugs.

Finally, the majority states "there is no dispute that a drug test was not attempted until sixteen days after the work accident." Again, in my view, whether the attempt to administer the drug test, which was terminated as a result of the employee's efforts to manipulate the test, occurred one day or sixteen days after the accident is not probative in determining whether the employee's injuries were caused by the influence of drugs. Rather, it suggests a conflation of the two presumptions in sections 50-6-110(c)(1) and (2). The majority concludes "the totality of the undisputed facts establishes that Employee is likely to prevail at trial in rebutting the presumption that drug or alcohol use was the proximate cause of his injury." Respectfully, I disagree. The evidence in this record from which the trial court or the Appeals Board could determine that the employee

would likely prevail at trial in overcoming the presumption that his injuries were caused by the influence of drugs falls far short of the applicable burden of proof.  I would reverse the trial court's award of medical benefits and remand the case.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Ricky Polk | ) Docket No. 2017-07-0644 |
| | ) |
| v. | ) State File No. 40864-2017 |
| | ) |
| Delta Faucet | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Allen Phillips, Judge | ) |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 29th day of August, 2018.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Sent to: |
|---|---|---|---|---|---|---|
| Ricky Polk | | | | | X | rickypolk@gmail.com |
| Hailey David | | | | | X | davidh@waldrophall.com |
| Allen Phillips, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov